UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY DAVIS,

    Plaintiff,

v.

U.S. SECURITY ASSOCIATES, INC.,

    Defendant.
_____/

Case No. 15-cv-11958

Paul D. Borman
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 28)

In this employment discrimination case, Plaintiff claims that Defendant U.S. Security Associates, Inc. ("U.S. Security") violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, by terminating him in retaliation for his involvement in an internal investigation into sexual harassment charges against his supervisor and for his complaints to management and human resources about his supervisor's harassing conduct. Defendant now moves for summary judgment, arguing that Plaintiff's Complaint must be dismissed in its entirety because Plaintiff has created no genuine issue of material fact that there was a proceeding pending before the Equal Employment Opportunity Commission ("EEOC") at the time of Plaintiff's termination and therefore Plaintiff has failed as a matter of law to state a *prima facie* case of retaliation under the "participation" clause of Title VII. Plaintiff responds that his claim is stated under the "opposition" clause of Title VII, not the participation clause, and that he has presented evidence of retaliation under that clause. The Court held a hearing on November 10, 2016, and DENIES Defendant's

1

motion for the reasons stated on the record at that hearing and for the reasons that follow.

## I. BACKGROUND

In May, 2009, Plaintiff began his employment with U.S. Security as an Account Manager for the Detroit region assigned to a single client, Consumers Energy. ECF No. 30, Pl.'s Resp. Ex. 1, Dec. 7, 2015 Deposition of Danny Davis 39:23-40:1, 43:16-44:7. US Security is in the business of providing security guards to businesses and has approximately 160 customers in the Detroit region. ECF No. 40, Ex. 1, February 17, 2016 Deposition of William Edward Riley 15:24-16:1, 24:17-22. Plaintiff held the position of Account Manager for approximately three years at which time he was promoted by Will Riley, the Vice President and General Manager at the time, and appointed as District Manager of the Detroit vicinity on May 9, 2012. Davis Dep. 48:5-6; 49:15-50:9; Riley Dep. 53:6-9, 56:15-18; ECF No. 28, Def.'s Mot. Ex. 1, Employment Agreement dated May 9, 2012. Tom Firmingham, Plaintiff's Branch Manager at the time, also participated in the May 9, 2012, decision to promote Plaintiff to District Manager. Davis Dep. 50:14-20.

On or about December 12, 2012, Plaintiff was again promoted by Mr. Riley and appointed a Regional Manager of the Detroit vicinity. *Id.* Ex. 2, December 12, 2012 Employment Agreement; Riley Dep. 58:15-19. Mr. Riley created the position of Regional Manager when he appointed Plaintiff. Riley Dep. 58:20-23. At the time of Plaintiff's promotion to Regional Manager, US Security was suffering from significant dysfunction following a merger with another security company, Advance Security. Riley Dep. 60:5-61:6. Plaintiff held the title of Regional Manager until his termination in June, 2013. Davis Dep. 50:21-51:1.

Shortly after Plaintiff was promoted to the position of District Manager in May, 2012, he was asked to participate in an investigation into complaints about Riley's workplace conduct and

specifically about alleged "sexual improprieties of dating people in the office, improper comments, that type of thing." Davis Dep. 85:21-86:9, 98:1-13. Plaintiff met with the investigator, whom he believed was a retired FBI agent, but had very little information to share with him about Will Riley because he had only been working closely with Riley for a short time and really had not observed much of Riley's behavior. Davis Dep. 98:1-17. Plaintiff knew that Riley was aware that Plaintiff met with the investigator because Riley and Plaintiff "talked openly about it" because Plaintiff "had nothing to say to the guy and nothing to hide from Will Riley." Davis Dep. 142:12-143:17. Plaintiff never received any criticism from Riley regarding Plaintiff's participation in this first investigation. *Id*. at 144:13-14. Plaintiff testified that after the 2012 investigation, once he began working regularly in the Southfield office with Riley after his June, 2012, promotion to District Manager, he began going to lunch with Riley often, and noticed how Riley talked, "particularly to women, said a lot of off-color stuff, made a lot of off-color comments and some promises." *Id*. at 99:2-6. Plaintiff noted that Riley would "become very agitated and angry if an employee said anything that agitated him. . . . [s]o . . . there was a history, people knew if you got on his wrong side, you were going to be unemployed." *Id*. 99:6-21.

In March, 2013, U.S. Security commissioned another investigation into a multitude of complaints from former and then current employees about numerous issues in the U.S. Security workplace. This investigation was conducted by Brett A. Rendeiro from the law firm of Varnum LLP. ECF No. 28, Pl.'s Mot. Ex. 4, May 20, 2013 Memorandum from Brett A. Rendeiro to L.J. Lutz, Vice-President, General Counsel and Secretary of U.S. Security Associates. Riley called Plaintiff in before Plaintiff was scheduled to meet with Rendeiro and "coached [Plaintiff] on what the expectations were and what [Plaintiff] should say." Davis Dep. 100:9-11. Plaintiff told Riley

3

he didn't know anything and was not going to say anything. *Id*. 100:11-13. Although the employees were instructed not to discuss their interviews with other employees, after Plaintiff interviewed with Rendeiro, Riley called Plaintiff in and asked him what he said and what questions Rendeiro had asked. *Id*. 100:23-25.

The Rendeiro Report investigated numerous complaints from both former and then current employees regarding a host of issues from favoritism to inappropriate sexual comments and conduct toward women. In some instances the complaints were found to be substantiated but in most cases Rendeiro was unable to substantiate the allegations. Included among the complaints he investigated were several that were critical of Plaintiff's job performance, which Rendeiro found to be substantiated. Rendeiro Report 13-15. The Report generally describes complaints of a largely dysfunctional workplace with several employees filing claims against U.S. Security for improper treatment and wrongful termination. *Id*.

Shortly after his first interview with Rendeiro in March, Plaintiff contacted Rendeiro, probably in "early April or late March," and asked for a second interview because Plaintiff felt he had not been forthcoming in the initial interview out of fear of retaliation from Riley and he "did not feel comfortable not being completely forthcoming." Davis Dep. 129:15-130:22; Rendeiro Report p. 23 n. 6. In the second interview, Plaintiff told Rendeiro that Riley in fact had made comments of a sexual nature to certain employees although Plaintiff had expressly denied such knowledge in the first interview with Rendeiro. Rendeiro Report 23-24. Rendeiro reports that Plaintiff "admitted that he requested the second interview after Will Riley started to question the performance of the branch," and Plaintiff "fear[ed] losing his job." *Id*. at 23 n. 6. Plaintiff did not recall telling Rendeiro in the second interview that his job performance had come under scrutiny. Davis Dep.

4

130:17-131:10. Plaintiff believed that there was going to be a third follow-up interview with Rendeiro, but Rendeiro never contacted Plaintiff to conduct that third interview. Davis Dep. 131:20-22. Rendeiro concludes in his Report that Plaintiff's allegations regarding Riley's allegedly improper sexual comments "are not capable of being substantiated." Rendeiro Report 23. In support of his conclusion, Rendeiro states that Riley denies making such comments, Davis previously in his first interview denied that Riley made such comments and that Plaintiff had waited to come forward with these allegations until after Riley started to question the branch's performance. *Id.* at 23-24.

Following the second interview with Rendeiro, and as scrutiny and criticism of his job performance by Riley escalated, Plaintiff emailed Rendeiro and also copied Rendeiro on emails that he sent to the U.S. Security legal department, management, and human resource department complaining of Riley's sexually harassing conduct and favoritism in the workplace. Davis Dep. 131:24-132:21. In one email dated May 23, 2013, to Chuck Schneider, CEO of U.S. Security, Plaintiff informed Schneider that he was "very concerned about recent events, conduct, retaliation and a clear lack of ethics and integrity that [he] witness[ed] daily and [has] been helpless to repair." ECF No. 30, Pl.'s Resp. Ex. 2, May 23, 2013 email from Davis to Chuck. Plaintiff states in his email to Mr. Schneider that there was an ongoing investigation of his Detroit region that "initially seemed to center on [Riley's] inappropriate conduct regarding female employees, dual standards and favoritism." *Id.* at 1. Plaintiff stated in the email that he had first hand knowledge that each of these complaints about Riley was true. Plaintiff also stated in the email that he was "appalled" that Rendeiro questioned him about his own conduct and job performance. *Id.* Plaintiff explains in the email to Schneider that he was frustrated that his reports of sexual harassment by Riley to legal and

5

human resources were being ignored, as well as by the failure of legal and HR to respond to similar allegations about Riley's sexually harassing conduct by U.S. Security's Quality Manager, Brandea Manley. *Id*. at 2. The email contains numerous complaints about Riley's performance as a manager, in addition to Plaintiff's complaints related to Riley's alleged sexual harassment of female employees. *Id*.

Effective June 21, 2013, US Security terminated Plaintiff's employment. Def.'s Mot. Ex. 5. Riley testified that it was his decision to terminate Plaintiff for "poor performance, had not met expectations." Riley Dep. 93:11-20. Riley states that the branch that Plaintiff had been hired to restore was still "dysfunctional," employees were complaining about Plaintiff and about Brandea Manley, profitability was low, overtime was high, clients were leaving and they were "losing money left and right." Riley Dep. 93:24-94:8. When asked to list the complaints about Plaintiff, Riley testified that he had "inklings of complaints that [Plaintiff] shared with him" that one other employee was complaining about Plaintiff; and Riley did not even know the substance of the complaint and never bothered to determine whether there was any substance to that employee's complaint. Riley Dep. 95:1-24. Riley testified that he was never informed of the findings that resulted from Rendeiro's investigation. Riley Dep. 92:21-93:9. Riley did acquire knowledge at some point that Plaintiff gave information during the Rendeiro investigation supporting Ms. Manley's claim that Riley had sexually harassed her. Riley Dep. 90:1-13.

Plaintiff admits that he never received any direct threats of retaliation for his participation in either the 2012 or the 2013 investigation but he knew from "things [he] had seen since he worked there," such as "watch[ing] Mr. Riley fire people quickly . . . how things would work out if [he] spoke up about anything." Davis Dep. 88:15-25. He was never directly told that he would be fired

6

if he cooperated in the investigation but concluded from "the extra scrutiny that came about after [he] spoke to Mr. Rendeiro and Mr. Riley stopped speaking to [him]," that his job was jeopardy. Davis Dep. 89:1-12.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order. Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

"Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987). If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 324. "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial. . . . In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting

*Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex*, 477 U.S. at 323-34. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (footnote omitted).

In making the determination on summary judgment whether there are genuine issues of material fact for trial, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). While all facts and factual inferences are drawn in favor of the nonmovant, *see Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), "[t]he 'mere possibility' of a factual dispute is not enough." *Martin v. Toledo Cardiology Consultants, Inc*., 548 F.3d 405, 410 (6th Cir. 2008) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). "If the evidence is merely colorable, . . . or is not significantly probative, . . . the court may grant judgment." *Anderson*, 477 U.S. at 249–50. In *Anderson*, the Court explained:

> [T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.

> \*\*\*
> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict. . . .

477 U.S. at 254.  The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis*, 226 F.3d at 511. Failure to establish a genuine issue of material fact as to an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc*., 936 F.2d 889, 895 (6th Cir. 1991).  Although all favorable inferences reasonably supported by the record must be granted to the plaintiff, *Matsushita*, 475 U.S. at 587–88, once the defendant moves for summary judgment, it becomes plaintiff's burden to produce evidence on each essential element of his claims.  *Celotex*, 477 U.S. at 322–23.  And plaintiff must produce enough evidence to allow a reasonable jury to find in his favor by a preponderance of the evidence.  *Anderson* , 477 U.S. at 252.  Plaintiff cannot meet his or her "burden by relying on mere '[c]onclusory assertions, supported only by [her] own opinions.'" *Green v. Central Ohio Transit Authority*, 647 F. App'x 555, 558 (6th Cir. 2016) (quoting *Arendale v. City of Memphis*, 519 F.3d 587, 560 (6th Cir. 2008)) (alterations in original).  Plaintiff "must show sufficient probative evidence, based 'on more than mere speculation, conjecture, or fantasy,' that would enable a jury to find in her favor." *Green*, 2016 WL 2586840, at \*3 (quoting *Arendale*, 591 F.3d at 601).

## III.   ANALYSIS

Title VII prohibits an employer from retaliating against an employee  who has "opposed" any practice by an employer that is made unlawful under Title VII or who has "participated" in an investigation under Title VII:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). "[T]his section prohibits an employer from retaliating against an employee who has "opposed" any practice by the employer made unlawful under Title VII; and prohibits an employer from retaliating against an employee who has "participated" in any manner in an investigation under Title VII. " *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir.), *cert. denied*, 531 U.S. 1052 (2000). "[F]ederal courts have generally granted less protection for opposition than for participation in enforcement proceedings." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989).

"In an action under Title VII, the plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas*[1] framework." *Abbott v. Crown Motor, Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). To establish a claim under either the participation or the opposition clause, where a plaintiff proceeds on the basis of circumstantial evidence alone, the retaliation claim is examined under the familiar *McDonnell Douglas* evidentiary framework. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987) ("Proof of a retaliation claim under Title VII is governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny."). Under this evidentiary framework, plaintiff must first establish a *prima facie* case by demonstrating that: (1) he engaged in protected activity, (2) this activity was known to the defendant, (3) the defendant took an adverse employment action and (4) there is a causal connection between the protected activity and the adverse

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

employment action. *Johnson*, 215 F.3d at 578. "If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. If the defendant carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.* (internal quotation marks and citation omitted).

The "participation" clause protects only "an employee's activities that occur in conjunction with or after the filing of a formal charge with the EEOC, not an employee's participation in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." *Abbott*, 348 F.3d at 543 (internal quotation marks and citations omitted). It is undisputed that no EEOC charge had been filed in this case at the time of the alleged retaliatory termination and thus Plaintiff's claim cannot lie under the participation clause. Plaintiff conceded this point at the November 10, 2016 hearing on the motion for summary judgment.

In moving for summary judgment, Defendant has elected to characterize Plaintiff's claim narrowly as a "participation" clause claim and makes the sole argument that Plaintiff has failed to create a genuine issue of material fact that he engaged in protected activity as required under that clause, i.e. Defendant asserts that there is no genuine issue of material fact that there was no pending EEOC charge at the time of the alleged retaliatory discharge. But Plaintiff concedes this fact. In limiting its request for summary judgment to a perceived "participation clause-only" claim, Defendant: (1) mischaracterizes Plaintiff's Complaint, which clearly complains of retaliation for participating in the investigation of claims into Riley's alleged sexual misconduct and for opposing Riley's alleged sexual harassment of female employees, *see* Compl. ¶ 12; (2) ignores Plaintiff's deposition testimony in which he explains that his "protected activity" was his participation in the

12

internal Rendeiro investigation and his subsequent complaints to corporate reflecting concerns about Riley's improper conduct, *see* Davis Dep. 141:21-142:3; (3) fails to observe established law recognizing that participation in internal investigations and meeting with investigators may, in certain circumstances, be protected activity under the opposition clause, *see, e.g., Crawford v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 277-78 (2009)*; Warren v. Ohio Dept. of Public Safety*, 24 F. App'x 259, 265 (6th Cir. 2001); and (4) utterly fails to satisfy Defendant's summary judgment burden of informing the Court in the first instance of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact" on *each* of the essential elements of Plaintiff's opposition clause claim. *Celotex*, 477 U.S. at 323.

It is now well established that "a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on [his] own initiative but not one who reports the same discrimination in the same words when [his] boss asks a question." *Crawford*, 555 U.S. at 277 (alterations added). Thus, a plaintiff can premise a retaliation claim under the opposition clause on involvement in an internal company investigation. *See also Mengelkamp v. Lake Metropolitan Housing Auth.*, 549 F. App'x 323, 330 (6th Cir. 2013) (rejecting defendant's argument on appeal that plaintiff's claim should have been evaluated according to the requirements of the participation clause because the complaint did not allege that plaintiff *opposed* any unlawful activity, but simply that plaintiff *participated* in investigations); *Reed v. Procter & Gamble Mfg. Co*., 556 F. App'x 421, 430-31 (6th Cir. 2014) (holding that plaintiff's participation in co-worker's internal complaint of discrimination was protected activity under the opposition clause). A report of alleged

13

discriminatory misconduct *may* merit protection under Title VII's retaliation provision even if it is expressed in response to questions posed in the context of an internal investigation.[2]

Moreover, in this case, Plaintiff also alleges in his Complaint (¶ 9), and reiterated in his deposition (Davis Dep. 141:25-142:3), that he also bases his opposition claim on emails he sent to management and human resources in which he complained about Riley's sexually harassing conduct in the workplace. The Sixth Circuit has "repeatedly held that complaints to human resources personnel regarding potential violations of Title VII constitute protected activity for purposes of establishing a prima facie case of retaliation." *Trujillo v. Henniges Automotive Sealing Sys. North America, Inc.*, 495 F. App'x 651, 655 (6th Cir. 2012) (citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007), *Hill v. Air Tran Airways*, 416 F. App'x 494, 498 (6th Cir. 2011), and *Shepard v. Uniboring*, 72 F. App'x 333, 336 (6th Cir. 2003)).

Because Defendant challenged only the protected activity prong of Plaintiff's *prima facie* case under a participation clause claim that Plaintiff does not assert, Plaintiff was not required to respond with evidence in support of the elements of his opposition clause claim. Defendant acted

---

[2] For these same reasons, the Court rejects Defendant's argument that Plaintiff has failed to exhaust his opposition claim. Plaintiff's EEOC Charge of Discrimination explains that he participated in a company-led investigation into claims of sexual harassment against his supervisor. ECF No. 28, Def.'s Mot. Ex. 6, Charge of Discrimination. Plaintiff's EEOC charge claims that he was then discharged for participating in that internal investigation into allegations of sexual harassment against Riley. The exhaustion requirement under Title VII "is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading." *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 471 (6th Cir. 2008) (internal quotation marks and citations omitted). "[T]he EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Id.* (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)). Because the law is well established in the Sixth Circuit that participation in an internal investigation can be protected activity under the opposition clause, Plaintiff's EEOC charge clearly encompasses and exhausted a potential opposition claim.

14

at its own peril when it elected to narrowly interpret Plaintiff's Complaint to allege only a claim under Title VII's participation clause and to similarly file a discreet and targeted motion for summary judgment aimed only at that theory of liability. Defendant, having made the tactical decision to characterize and challenge Plaintiff's claim solely as a "participation" claim, cannot now raise the sufficiency of Plaintiff's "opposition" claim for the first time in a reply brief. To permit Defendant to do so "ignore[s] the fundamental premise that it is still the *defendants*' burden at the summary judgment stage to make a timely initial showing that the plaintiff lacks evidence for a claim. Only when the defendants have made such a claim does the burden then shift to the plaintiffs. The defendants' failure to raise their [opposition] argument in a proper, [] summary judgment motion on the merits has relieved the plaintiff of the burden to come forward with specific facts." *Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 682 (E.D. Mich. 2002) (citing *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001)) (emphasis in original).[3]

---

[3] In so ruling, the Court expresses no opinion on the viability of Plaintiff's opposition clause retaliation claim or on whether Plaintiff has stated a *prima facie* case under that clause. The Court concludes only that Plaintiff's Complaint, fairly construed, states a properly exhausted opposition claim that Defendant has elected not to challenge on summary judgment. Proof of such a claim will require Plaintiff to establish, *inter alia*, that he was engaged in protected activity (*i.e.* that he was opposing discriminatory conduct), that he held a "good faith belief" that the practice he opposed was unlawful and that there was a causal connection between his protected activity and his termination. *See, e.g., Brown v. VHS of Michigan, Inc.,* 545 F. App'x 368, 373-74 (6th Cir. 2013) (noting that a plaintiff alleging retaliation based on opposition is required to give evidence that her complaint put her employer on notice that she opposed an unlawful employment practice and must demonstrate, either through direct or circumstantial evidence, "that the decision-maker had knowledge of the protected activity" and "that her protected activity was the likely reason for the adverse action"); *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 431 (6th Cir. 2014) ("The second and fourth elements for a *prima facie* case of retaliation require that the employer knew of the plaintiff's protected activity and that the protected activity and the adverse employment action be causally linked. When understood in conjunction, then, these two elements require a plaintiff to show that the relevant decision-makers were aware of his or her protected activity.").

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

                                      s/Paul D. Borman
                                      PAUL D. BORMAN
                                      UNITED STATES DISTRICT JUDGE

Dated: November 16, 2016

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 16, 2016.

                                      s/Deborah Tofil
                                      Case Manager